UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SHEILA A. VISINAIZ,<br>    Plaintiff, | )<br>)<br>) |
| v. | ) CAUSE NO.: 2:16-CV-44-JEM |
| | ) |
| NANCY A. BERRYHILL,<br>Acting Commissioner of the<br>Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Sheila A. Visiniaz on February 3, 2016, and a Plaintiff's Memorandum in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security [DE 16], filed by Plaintiff on August 4, 2016. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On November 8, 2016, the Commissioner filed a response, and on December 6, 2016, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**I.    Procedural Background**

Plaintiff filed an application for disability insurance benefits and for supplemental security income alleging that she became disabled on August 15, 2012. Plaintiff's application was denied initially and upon reconsideration. On June 23, 2014, Administrative Law Judge ("ALJ") Rebecca LaRiccia held a hearing via video conference at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On August 13, 2014, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since August 15, 2012, the alleged onset date.

3. The claimant had severe impairments: degenerative disc disease, joint dysfunction, diabetes, hypertension, emphysema, and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. She can sit six hours and stand/walk two hours in an eight hour workday but must use a cane for ambulation. The claimant can frequently balance and occasionally stoop, kneel, crouch, crawl, reach overhead and climb ramps or stairs but never climb ladders, ropes or scaffolds. She should avoid concentrated exposure to extreme heat/cold, wetness, humidity, and pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation. The claimant must avoid concentrated exposure to workplace hazards such as slippery uneven surfaces and unprotected heights.

6. The claimant is unable to perform any past relevant work.

7. The claimant was 44 years old, defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding that the claimant is not disabled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability as defined in the Social Security Act from August 15, 2012, through the date of the decision.

On January 11, 2016, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.     Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v.*

*Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**III. Analysis**

Plaintiff argues that the ALJ failed to properly analyze a number of Plaintiff's impairments and to properly incorporate them into her residual functional capacity (RFC) and committed several errors with regard to the Vocational Expert testimony. The Commissioner argues that the ALJ's opinion is supported by substantial evidence.

4

A.      Residual Functional Capacity

Plaintiff argues that the ALJ failed to properly consider several of Plaintiff's impairments, alone and in combination. The Commissioner argues that the ALJ adequately assessed Plaintiff's impairments and determined her RFC.

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p,1996 WL 374184, at *7(Jul. 2, 1996). Although an ALJ is not required to discuss every piece of evidence, she must consider all of the evidence that is relevant to the disability determination and provide enough analysis in her decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young,* 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to [her] conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Plaintiff argues that the ALJ failed to assess all of Plaintiff's symptoms and impairments and

5

did not address Plaintiff's impairments in combination. The ALJ found that Plaintiff had severe impairments of degenerative disc disease, joint dysfunction, diabetes, hypertension, emphysema, and obesity. She stated generally that Plaintiff's impairments did not rise to the level of a listing in combination, but Plaintiff argues that she did not thoroughly consider Plaintiff's impairments in combination, and neglected to include several of her impairments in the RFC.

"Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

In particular, Plaintiff argues that the ALJ failed to consider the combination of her cardiovascular, endocrine, musculoskeletal, respiratory, and mental impairments, along with her morbid obesity. "Social Security Ruling 02-1p requires an ALJ to consider the exacerbating effects of a claimant's obesity on her underlying conditions (even if the obesity is not itself a severe impairment) when arriving at a claimant's RFC," *Hernandez v. Astrue*, 277 F. App'x 617, 623-24 (7th Cir. 2008) (citing SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002)) (other citations omitted), and the Court notes that in this case the ALJ concluded that Plaintiff's obesity *was* a severe impairment, making the determination even more important. *See also Gentle v. Barnhart*, 430 F.3d

6

865, 868 (7th Cir. 2005) (finding that, even if obesity is not a severe impairment itself and "merely aggravates a disability caused by something else[,] it still must be considered for its incremental effect on the disability"). Ruling 02-1p provides that in evaluating obesity in assessing RFC, "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02-1p, at *6. Further, Ruling 02-1p explains that an ALJ's RFC determination must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. *Id.* (citing SSR 96-8p). In this case, the ALJ included a single statement that "the claimant's obesity was considered in relation so the musculoskeletal, respiratory, and cardiovascular body systems listings as required by the Ruling" and limited Plaintiff to sedentary work with some limitations. However, the ALJ did not create a logical bridge from the bare statement that he considered Plaintiff's obesity in combination with other limitations and what specific conclusions he came to regarding the limitations they cause.

Plaintiff also argues that the ALJ erred in failing to consider her depression, both on its own and in combination with her other impairments. Plaintiff was diagnosed with major depressive disorder, recurrent, by psychologist Roger Parks in 2012. The ALJ noted that opinion, but did not include any mental limitations in Plaintif's RFC. She discounted the GAF of 50 assigned by psychiatrist Parks and discounted any other possibility of mental limitations on the basis of her failure to undergo treatment other than medication, which the ALJ concluded provided "some benefit." This analysis is troubling for several reasons. First, although the ALJ is correct that a GAF is a "snapshot" of functioning and is not determinative of disability, s*ee Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010), it is the only GAF or other measure of social functioning that the ALJ

mentions, and a GAF of 50 is a score that indicates serious limitations. *See, e.g.*, *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 693 (7th Cir. 2016) (*O'Connor-Spinner II*) ("[Plaintiff]'s GAF score once again was recorded as 50, indicating serious symptoms or functional impairments."); *Campbell v. Astrue*, 627 F.3d 299, 306-07 (7th Cir. 2010) ("A GAF rating of 50 does not represent functioning within normal limits. Nor does it support a conclusion that [the plaintiff] was mentally capable of sustaining work."). Indeed, "[a] diagnosis of 'major depression' means, by definition, that an individual's 'symptoms cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.'" *O'Connor-Spinner II*, 832 F.3d at 693 (quoting AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 356 (4th ed. text revision 2000)). It appears, however, that the ALJ ignored the diagnoses, and certainly disregarded the mental health assessment performed by consultative psychiatrist on the sole basis that Plaintiff has not sought treatment other than medication and that treatment provided "some benefit" to Plaintiff. However, the ALJ did not ask Plaintiff about her perceived failure to seek adequate treatment, and "an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *see also Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ must not draw any inferences about a claimant's condition from this failure [to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quotation omitted).

Furthermore, even if Plaintiff experienced some benefit from pharmaceutical treatment, that does not mean that she does not suffer from mental illness or that her mental illness has no affect on her ability to perform a full-time job. *See, e.g., Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). ("Even if we accept the [single] treatment note as evidence that [the plaintiff] enjoys a few

8

'good days,' that evidence still offers no support for the ALJ's finding that her mental illness does not prevent her from holding a job."); *see also Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("[S]ymptoms that 'wax and wane' are not inconsistent with a diagnosis of recurrent, major depression. 'A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days.'") (quoting *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)).

In this case, the ALJ bases her conclusion that medication was effective for treating Plaintiff's depression only on Plaintiff's testimony, and does not cite any medical records regarding the effectiveness of medication. In fact, at the hearing Plaintiff only said that "the medication helps. . . [T]here used to be days I would just cry nonstop. And now, I mean, what I get upset, sure I cry. But it helps. I don't feel as down on myself." AR 51. She estimated that she still has crying spells at least once per week. AR 51. Plaintiff's self-report that her crying spells have decreased in length and frequency is not a sufficient basis for the ALJ's conclusion that Plaintiff is now unaffected by her depression or would be able to maintain a regular work schedule.

The ALJ erred in her analysis of Plaintiff's depression, and failed to include in the RFC even the mild limitations in concentration, persistence or pace and social functioning the ALJ concluded Plaintiff experienced. Instead, the RFC only addresses Plaintiff's physical abilities and work environment and does not include any additional restrictions, without explanation, despite the clear mental limitations in the record. *See Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention "that the ALJ accounted for [the plaintiff]'s limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"); *Craft*, 539 F.3d at 677-78 (limitation to

9

unskilled work did not account for limitations in concentration, pace, and mood swings); *Young*, 362 F.3d at 1004 (concluding that a limitation of "simple, routine, repetitive, low stress work with limited contact with coworkers and limited contact with the public" was inadequate to take into account the claimant's limitations). The Commissioner argues that mild limitations do not necessarily warrant inclusion in the RFC, but that reasoning is not included in the ALJ's opinion. See *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."). In short, the ALJ failed to adequately addressed Plaintiff's diagnosed depressive disorder, improperly discounting the reports of the examining psychologist, failing to incorporate even the limitations she did find into the RFC without explanation.

Similarly, Plaintiff was diagnosed with sleep disorder and prescribed medication to treat it. The ALJ does not mention the diagnosis or the potential side effects of medication at all, either to include its limitations in the RFC or to explain why she was rejecting the diagnosis. This was an error. *See Campbell*, 627 F.3d at 306 ("A decision denying benefits need not discuss every piece of evidence, but if it lacks an adequate discussion of the issues, it will be remanded."); *Golembiewski*, 322 F.3d at 917 ("[T]he ALJ may not ignore an entire line of evidence that is contrary to the ruling.").

Plaintiff argues that the ALJ improperly omitted from the RFC Plaintiff's need to elevate her legs twice a week for 90 minutes to reduce swelling. The Commissioner argues that the ALJ reasonably gave little weight to the treating physician's opinion because other reviewing physicians did not note edema of Plaintiff's need to elevate her legs. Plaintiff points out that the edema diagnosis came after the opinions of the state agency physicians were drafted, and argues that their

10

opinions cannot be used to justify ignoring the opinion of Plaintiff's treating physician. In addition, Plaintiff argues that the ALJ erred in failing to address Plaintiff's COPD and emphysema diagnoses, both of which occurred after the state agency physicians' opinions were drafted. The case is being remanded for other reasons, as described herein, and on remand the ALJ is directed to obtain updated information about Plaintiff's more recent diagnoses, both in terms of additional limitations they impose and how they affect Plaintiff's RFC in combination with her other impairments. The ALJ is reminded that "[a] treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).

Although the ALJ need not specifically include every limitation alleged by Plaintiff in the RFC, she must consider all the impairments and the combination of impairments, and explain how she incorporated all of Plaintiff's symptoms and limitations into the RFC. "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (citing SSR 96-8p; *Golembiewski*, 322 F.3d at 917). This the ALJ failed to do, and this case must be remanded for a new RFC that incorporates all of Plaintiff's limitations, including an explanation of how the limitations from each of her impairments (particularly her severe impairments, but also those that are not severe), alone and in combination, are reflected into the RFC.

B. Vocational Expert Testimony

Plaintiff argues that the ALJ failed to include several limitations in Plaintiff's RFC, but also

11

that the hypothetical question posed to the Vocational Expert did not even include all of the limitations included in the RFC. In particular, Plaintiff argues that the ALJ did not include the limitation that Plaintiff must avoid concentrated exposure to poor ventilation. Plaintiff also argues that the ALJ did not comply with the requirement that the job testimony was consistent with the Dictionary of Occupational Titles.

When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Young*, 362 F.3d at 1003 ("a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record"); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers.") (citation omitted). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform. *Kasarsky*, 335 F.3d at 543. In addition, the ALJ must make certain the jobs the VE identifies are consistent with Plaintiff's DOT reasoning level. *Prochaska*, 454 F.3d at 735. "Under SSR 00-4p, . . . the ALJ has an affirmative responsibility to ask if the VE's testimony conflicts with the DOT, and if there is an apparent conflict, the ALJ must obtain a reasonable explanation." *Terry*, 580 F.3d at 477 (citing SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000)).

The case is being remanded for other reasons described above, and new VE testimony will likely need to be obtained based on the appropriate RFC findings. On remand, the ALJ is cautioned that she must incorporate all relevant limitations in her questioning of the VE and that she has a duty to resolve any conflicts between the VE testimony and the DOT.

## IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in the Plaintiff's Memorandum in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security [DE 16], and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 20th day of March, 2017.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc: All counsel of record